JOSEPH F. DELGAUDIO ET AL. *v.* ARTHUR B. INGERSON ET AL.

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 91264

Memorandum filed July 30, 1954.

*Woodhouse, Schofield & Fay,* of Hartford, and *James F. Dawson,* of New Britain, for the plaintiffs.

*James B. Hallett,* of Hartford, for the defendants.

*Warren Maxwell,* of Hartford, for the defendants Ingerson.

*Joseph X. Friedman* and *Davis, Lee, Howard & Wright,* both of Hartford, for the defendant Friedman.

COMLEY, J. On October 9, 1950, the plaintiff husband contracted to purchase from Pinecrest, Inc., a dwelling house then in process of construction in a development known as Stepney Village in the town of Rocky Hill. This was one of twenty-seven similar houses in the development. Title was taken in the name of both plaintiffs on December 28, 1950. At that date there was still some interior painting and decorating to be done. This was completed on January 10, 1951, and the plaintiffs then moved into the house.

It was understood that the house would be furnished by the grantor with an oil burner and a forced hot air heating system although neither the bond for deed nor the deed itself so provides. The grantor had made a contract with the defendants Arthur B. Ingerson and Robert D. Ingerson, doing business in Bristol, Connecticut, as The Ingerson Heating Company, to supply and install oil burners in all the twenty-seven houses, including the one purchased by the plaintiffs. The Ingersons bought the burners from The Lennox Furnace Company, which has a factory in Syracuse, New York.

The Lennox oil burner was installed in the plaintiffs' house by The Ingerson Heating Company on or about November 20, 1950. After installation it was tested by Robert Ingerson himself. During most, if not all, of the period between that date and January 10, 1951, the burner was in operation in order to provide heat while the house was being decorated.

Between January 10, 1951, and January 13, 1951, the plaintiffs did not touch the burner. They adjusted the thermostat once or twice. During this

period the burner did not operate efficiently, remaining in operation for as much as two hours at a time although the house was a small, five-room, ranch-type structure.

On the morning of January 13, 1951, the plaintiff husband left for work before 7 o'clock. Shortly before 7 o'clock, the plaintiff wife, who was in the bathroom combing her hair, heard a noise or rumble which she described as a "Poof." At first she thought it was snow sliding off the roof. She felt chilly and went into the living room where she advanced the thermostat. When she returned to the bathroom she felt a great rush of hot air coming through the duct. She then went into the kitchen and saw smoke pouring from the door between the kitchen and the utility room where the burner was located. Upon opening the door she observed flames pouring from the burner. Other objects in the room were on fire, including the dust bag on a vacuum cleaner which was stored there. There was a hole about the size of a half-dollar in the metal housing of the burner and the housing itself had dropped down several inches. The fire then spread rapidly to other rooms in the house and these rooms, together with their contents, were badly damaged.

The only named defendants are the Ingerson brothers and Bernard Friedman, who is president and treasurer of Pinecrest, Inc. At the conclusion of the plaintiffs' case, a nonsuit was granted as against Bernard Friedman. It is to be noted that neither Pinecrest, Inc., nor The Lennox Furnace Company is a party to the action.

The cause of action against the Ingerson brothers is set forth in two counts, the first alleging a breach of warranty and the second sounding in negligence. The plaintiffs cannot prevail on the first count because there is no privity of contract between them

and the Ingersons. The parties to the sale of the burner were the Ingersons as sellers and Pinecrest, Inc., as buyer. As was stated in *Borucki* v. *MacKenzie Bros. Co.*, 125 Conn. 92, 96, " '[t]here cannot be a warranty where there is no privity of contract.' "

There is no occasion to consider whether in the sale of the house to the plaintiffs by Pinecrest, Inc., there was a warranty, express or implied, of the fitness of the burner for the use for which it was intended, since that corporation is not a defendant in the action.

There remains for consideration the claim of negligence against the Ingersons. This necessitates a finding as to the cause of the fire. The evidence on this question was in serious conflict and consisted of the observations and opinions of experts long after the event. It seems clearly established that there was no defect in the burner itself. If properly installed and properly adjusted and properly inspected, it would have functioned properly. The court finds that the fire originated after an explosion due to accumulated oil vapor in the firing chamber. This explosion was due to improper ignition. This was caused either by a fouling of the electrodes or by the presence of foreign matter in the burner nozzle giving rise to a low or distorted flame in the firing chamber. Either of these defective conditions could have been eliminated by the exercise of reasonable care in the installation of the burner or by the exercise of reasonable inspection after the burner was placed in operation. The court concludes that the Ingerson brothers were negligent in the installation of the burner.

The question is whether these plaintiffs are entitled to recover on the ground of negligence. There can be no doubt that the Ingersons were independent

contractors in the installation of the burner. Their contract was with Pinecrest, Inc. They owed no contractual duty to the plaintiffs. Ordinarily a third party such as these plaintiffs has no right of recovery in negligence against an independent contractor. The rule is thus stated in *Bogoratt* v. *Pratt & Whitney Aircraft Co.,* 114 Conn. 126, 142: "[W]here the work of an independent contractor is completed, turned over to, and accepted by the owner, the contractor is not liable to third persons for damages or injuries subsequently suffered by reason of the condition of the work, even though he was negligent in carrying out the contract." See also 38 Am. Jur. 663; notes, 123 A.L.R. 1197; 41 A.L.R. 8.

This rule, however, is subject to certain exceptions and one of them is expressly recognized in the *Bogoratt* case, supra, in the following language: "The situation could not reasonably be held to fall within any of the recognized exceptions to this rule, including that which holds that where the work done and turned over by the contractor is so negligently defective as to be imminently dangerous to third persons whom he knew, or ought to know, would use it, he remains liable, even after the completion of his work and its acceptance by the contractee, to third parties injured as the result of his negligence if he knew, or, in view of the peculiar circumstances of the case, should have known the dangerous condition by him created. . . ." This exception has been applied, and the independent contractor held liable to third parties, in cases involving negligently defective work upon such dangerous instrumentalities as elevators (*Berg* v. *Otis Elevator Co.,* 64 Utah 518; *Sutton* v. *Otis Elevator Co.,* 68 Utah 85; *Dahms* v. *General Elevator Co.,* 214 Cal. 733); bridges (*Holmes* v. *T. M. Strider & Co.,* 186 Miss. 380); electric wiring (*Smith* v. *St. Joseph Ry., Light, Heat & Power Co.,* 310 Mo. 469); furnaces (*Holland Fur-*

*nace Co.* v. *Nauracaj,* 105 Ind. App. 574); and gas water heaters (*Davey* v. *Turner,* 55 Ga. App. 786). And in a case involving a situation almost exactly like that in the present case, the above exception was held applicable to the defective installation of an oil burner. *Hunter* v. *Quality Homes, Inc.,* 45 Del. 100.

For the above reasons, the plaintiffs are entitled to a recovery from the Ingersons. It was stipulated that the fire damage to the house was $4620. The other items of damage, including moving costs and rent during repair of the house, total $1422.

Judgment is rendered on the second count for the plaintiffs to recover from the defendants Arthur B. Ingerson and Robert D. Ingerson, doing business as Ingerson Heating Company, the sum of $6042, with interest at the rate of 6 per cent per annum from January 13, 1951, to date. Judgment on the first count is rendered in favor of the defendants.