Skovran, Appellant, v. Pritz.

426

Argued October 1, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Robert Palkovitz*, with him *David S. Palkovitz*, and *Jack Palkovitz*, for appellants.

*D. W. MacDonald, Jr.*, for appellee.

OPINION BY MR. JUSTICE CHIDSEY, November 12, 1956:

In this trespass action brought on behalf of the minor plaintiff and by her parents in their own right to recover damages for personal injuries, there were jury verdicts for the defendant. Plaintiffs' motion for a new trial was denied and judgments entered on the verdicts. These appeals followed.

Route 166 in Fayette County is a two-lane State Highway, 19 feet wide, and extends from the Borough of Masontown in a southerly direction to New Geneva. There is a 7-foot berm on its east side and a 5-foot berm on the west side. About three miles south of Masontown an improved township road leading westwardly to the Village of Martin connects at right angles, but does not extend beyond, Route 166. The accident in question occurred at or near this T-intersection at about 5:30 P.M. on September 4, 1954, a dry, clear day. The plaintiff, Diana Skovran, a minor about 16½ years of age, was struck by an automobile driven by the defendant, Robert Pritz, a minor about 17 years of age, when she was crossing from the west side to the east side of Route 166. The defendant had come from Masontown and was driving southwardly. It was not disputed that the minor plaintiff suffered severe injuries.

Diametrically opposed versions as to how the accident happened were given. The minor plaintiff testified that she was a passenger on a public bus travelling southward on Route 166 from Masontown which turned right into the road leading to Martin and stopped to permit her to alight; that she got off the bus by the right front door, walked around its front and then back along the far or southerly side of the bus to the edge of Route 166; that she then turned and walked in a southerly direction on the westerly side of said route to a No. 166 route sign on the south side of the intersection; that she stopped and put down two heavy shopping bags which she was carrying, looked around for her brother who was to meet her but did not see him; that she then picked up her shopping bags, one in each hand, and while standing on the western berm of Route 166 looked in both directions, saw no vehicles

approaching and started walking across the road; that just short of the white dividing line in the center of Route 166 she stopped, looked to her right, then to her left, observed no cars coming, and then continued to cross the white line in the center of the road; that she continued to look to her right to observe any cars coming in the northbound lane of traffic and had reached a point approximately 2 feet from the easterly side or edge of the berm when she heard brakes screeching, looked to her left, and saw a car 15 feet away which struck her only a moment later by the right front end. It was not disputed that immediately after the impact the minor plaintiff's unconscious body was found lying partly on the road and partly on the berm on the westerly side of Route 166, quite near the Route 166 sign, the point where she had originally started to cross the road. Her story was corroborated by her brother who stated he saw the accident as he was approaching Route 166 on foot from his home which was near the eastern side of the highway.

Defendant's version of the accident was that he was driving a 4-door Chevrolet sedan in a southerly direction on Route 166, accompanied by a passenger, Edward Penska, who was seated in the front seat of the car to the driver's right; that when he arrived at a point approximately 100 feet north of the T-intersection leading to Martin he observed the bus stopped in the center of the Martin road, right angled to Route 166; that he was driving on his right side of the road, that is the southbound lane, at a speed of approximately 45 miles per hour; that when he was about 40 feet from the standing bus he observed the minor plaintiff carrying shopping bags, walking rapidly with her head down from the left rear side of the bus toward the center of Route 166; that he immediately "angled the

wheel to the left and hit the brakes"; that he turned from the right lane of traffic to the left to avoid hitting her and that at the moment of impact she was near the center of Route 166; that the rear end of his car skidded to the right in a southerly direction about 1½ feet; that the point of impact on the car was near the right rear door where it joins the right rear fender; that after striking the minor plaintiff his car continued to the left onto the berm on the east side of Route 166; that to avoid a fence post he swung back on Route 166 and stopped approximately 100 feet beyond the point of impact in the center of the road. It was not disputed that tire marks made by his car extended about 40 feet to the rear of the point where the minor plaintiff had been struck and 90 to 100 feet beyond the point of impact. Photographs taken by the minor plaintiff's father were introduced which showed no marks or indentation on the front of the defendant's car but a deep crushing indentation on the right rear door where it joined the right rear fender. Penska, the passenger in defendant's car, corroborated the testimony of the defendant in all respects pertaining to the speed they were travelling, the place and manner of the accident, the point of impact on the car, its swerving and skidding and the tire marks on the highway. He also testified that the minor plaintiff "dashed out from behind the bus". The minor plaintiff, her brother, the defendant and his passenger were the only eye witnesses to the accident. The bus driver called by plaintiff proceeded to the Village of Martin after she alighted and did not witness the happening of the accident.

In this Court the plaintiff argued that the trial court erred in not informing the jury of its function to reconcile all testimony where possible; in sustaining defendant's objection to plaintiff's request of having

defendant draw a line on one of the photographs, which depicted a long stretch of Route 166 in perspective, to show the course of travel of the minor plaintiff across the highway; in charging the jury that the minor plaintiff was required to continue to look as she proceeded across the highway without stating that she was required to look to her left only until she reached the middle of the highway and then to her right, having safely crossed the southbound lane of traffic; and that the court did not adequately charge the jury as to interest or bias on the part of witnesses. The plaintiffs did not assign any of these alleged errors in support of their motion for new trial, and therefore were not considered by the court below in its disposition of the motion. Consequently appellant cannot invoke them here on appeal: *Williams v. Masters, Mates & Pilots of America, Local No. 2,* 384 Pa. 413, 120 A. 2d 896; *Sherwood v. Elgart,* 383 Pa. 110, 117 A. 2d 899; *Magazzu Election Case,* 355 Pa. 196, 49 A. 2d 411; *Montgomery County Bar Association v. Rinalducci,* 329 Pa. 296, 197 A. 924. None of them constitute basic or fundamental error and indeed if they were properly before us, after reading the record and the court's comprehensive charge, we consider them of no merit. The only questions presented to and considered by the court in support of plaintiff's motion for new trial and now properly before us are: (a) did the court err in refusing plaintiff's seven points for charge, and (b) was the verdict against the weight of the evidence?

(a) The first five of the requested points for charge were as follows: "1. The defense of contributory negligence is not established unless you find from the preponderance of evidence that Diana Skovran was negligent, that is, that she failed to exercise ordinary care as a reasonable prudent person under the circum-

stances. 1.a. If you find that the defendant realized the danger to the minor plaintiff, Diana Skovran, but so recklessly disregarded that, even though he had no actual intent, then there was a willingness to inflict injury and a conscious indifference to the perpetration of the wrong which removes the defense of contributory negligence. 2. Every person, who, himself, is exercising ordinary care, has a right to presume that every other person will perform his duty and obey the law, and, in the absence of reasonable ground to think otherwise, it is not negligence to assume that he is not exposed to danger which can come to him only from violation of law or duty by such other person. 3. Intent is not an essential element of negligence. Neither intention to injure another person, nor intention to violate the law, nor intention to do or not to do any particular act is necessarily involved, although it may be involved, in the failure to exercise ordinary care. 4. The operator of a motor vehicle on the wrong side of the highway in violation of the Vehicle Code of May 1, 1929, P. L. 905, paragraph 1004, as amended, is negligent.".

Neither in his brief nor oral argument in this Court did appellant complain of the court's refusal of points 1 and 3 which were fully covered in the court's charge and refused for that reason. Point 1.a. was not applicable for the evidence did not warrant a finding that defendant was guilty of wilful and wanton negligence, thereby exculpating the plaintiff of contributory negligence. See *Kasanovich, Admrx. v. George et al., Trustees,* 348 Pa. 199, 34 A. 2d 523. Point 2 might have been approved as a general proposition of law but under the facts and comprehensive charge of the court its omission did no harm and did not amount to reversible error. Point 4 referring to the provision of

the Motor Vehicle Code, unrelated to the facts was too general and to be of any benefit to the plaintiffs required the assumption that defendant had been travelling on the wrong side of the road. This was disputed. Defendant testified that he was travelling on the right side of the road and turned to the left side only to avoid hitting the minor plaintiff in the sudden emergency which confronted him. The point as an abstract statement of the law was of no efficacy and indeed, if approved could have been misleading to the jury. When it was refused, counsel sought no amplification of the point. Points 6 and 7 relate to the charge on the subject of damages. In view of the jury's verdict for the defendant, any erroneous charge thereon would be harmless error. However, the points only express in different language what the court charged the jury. The court's meticulous charge on the subject of damages covers five printed pages.

(b) We cannot find that the verdict was against the weight of the evidence. The case presented conflicting testimony and the jury adopted defendant's version of the occurrence. A new trial will not be granted because of a mere conflict of testimony: *Decker v. Kulesza*, 369 Pa. 259, 85 A. 2d 413, and cases cited therein. Strongly militating against the minor plaintiff's story that the automobile struck her head-on after she had practically crossed the road was the evidence that the front of the defendant's car was unblemished and the damage done to it entirely at the right rear which accorded with the defendant's account of the accident. The evidence supported a finding by the jury that the minor plaintiff hurriedly emerged from behind the bus and proceeded across the highway without looking for approaching cars. The credibility of the witnesses was for the jury. As stated in the

opinion of the court below: ". . . The jury, by its verdict, obviously accepted the defendant's version of the accident, amply supported by credible testimony and corroborated by the photographs of the scene and the defendant's car. . . .".

The judgments are affirmed.

Mr. Justice MUSMANNO dissents.