## Evans *v.* Otis Elevator Company, Appellant.

Argued January 10, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*John J. McDevitt, 3rd,* with him *Harry B. Schooley, Jr.,* for appellant.

*E. Charles Coslett,* with him *Robert L. Fleming,* for appellee.

*John L. McDonald,* with him *James P. Harris, Jr.,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, March 13, 1961:

On July 20, 1955, Harry P. Evans (Evans), employed as a stock clerk by Sperling Tobacco Company (Sperling) in Wilkes-Barre, Pa., was operating Sperling's freight elevator which, while descending, struck something which tilted the left side of the elevator cage whereupon a board[1] from the elevator roof fell on Evans' head, causing serious injuries. Evans instituted this trespass action in the Court of Common Pleas of Luzerne County against Otis Elevator Company (Otis), alleging that Otis was negligent in failing to properly inspect the elevator and in failing

---

[1] The board was 2′ long, 3″ wide and 1″ thick.

to notify Evans or Sperling of its defective and dangerous condition. Otis joined Sperling as an additional defendant. After a jury trial before the Honorable FRANK L. PINOLA, the jury returned a verdict in Evans' favor against Otis in the amount of $65,000 and a verdict in favor of Sperling. After refusal of Otis' motions for judgment n.o.v. and a new trial, judgments were entered on the verdicts and from the entry of these judgments Otis has taken these two appeals.

Otis first contends that a judgment n.o.v. should be entered because (1) Otis owed no duty to Evans, (2) the evidence was insufficient to sustain a finding that the individual whom Evans testified he observed on Sperling's premises within an hour prior to the accident was an Otis employee and (3) Evans failed to prove that a reasonable investigation would have revealed any defect or danger in the condition of the elevator.

In passing upon this contention of Otis, we consider and evaluate the evidence and the inferences reasonably arising therefrom in the light most favorable to Evans, the verdict winner: *Linsenmeyer v. Straits,* 402 Pa. 7, 9, 166 A. 2d 18[2]; *Muroski v. Hnath,* 392 Pa. 233, 235, 139 A. 2d 902. Examining the evidence in this light, it appears that Sperling for 25 to 30 years had maintained on its premises a "Warsaw" constructed freight elevator which it used in connection with its wholesale tobacco business; Evans and Coulter, a fellow-employee, on July 20, 1955, after having deposited stock on the third floor, were descending in the elevator when, between the first and second floors, it struck something on the right-hand side of the cage; the elevator stopped and the left-hand side of the cage tilted whereupon a roof board fell and struck Evans. In 1953, Otis and Sperling entered into a written agreement which was in effect

on the date of the accident. Under the terms of that agreement, Otis agreed to furnish to Sperling "OTIS SERVICE" on its elevator for $17.75 each month. This "OTIS SERVICE" was "to consist of a semi-monthly examination of the elevator, including oiling and cleaning machine, motor and controller; greasing or oiling bearings and guides; making necessary minor adjustments." Otis also undertook to "examine, lubricate and adjust the following accessory equipment: COA.: Interlocks, Car gates, Freight gates, Hall buttons. Hoistway doors, door hinges, door latches, door knobs and when necessary: Oils, greases, rope preservatives and cleaning materials."

Otis argues that this agreement imposed upon it no duty or obligation to Evans and that Evans, not a party to this agreement, has no standing to complain of an injury allegedly sustained by reason of the manner in which Otis performed this agreement. Generally a party to a contract does not become liable for a breach thereof to one who is not a party thereto. However, a party to a contract by the very nature of his contractual undertaking may place himself in such a position that the law will impose upon him a duty to perform his contractual undertaking in such manner that third persons—strangers to the contract—will not be injured thereby; Prosser, Torts, (2nd ed. 1955), §85, pp. 514-519. It is not the contract per se which creates the duty; it is the law which imposes the duty because of the nature of the undertaking in the contract. If a person undertakes by contract to make periodic examinations and inspections of equipment, such as elevators, he should reasonably foresee that a normal and natural result of his failure to properly perform such undertaking might result in injury not only to the owner of the equipment but also third persons, including the owner's employees: *Bollin v. Elevator Construction & Re-*

*pair Co.,* 361 Pa. 7, 17, 18, 63 A. 2d 19 and cases therein cited. The orbit of Otis' duty to third persons is measured by the nature and scope of his contractual undertaking with Sperling and, if, as presently appears, Otis undertook to inspect the elevator at regular intervals, and, if the elevator was in a defective or dangerous condition discoverable by reasonable inspection, Otis would be liable to third persons, regardless of any privity of contract, who might be injured by Otis' failure to properly perform its contractual undertaking of inspection. Such principle finds support in reason, justice and precedent: *Dahms v. General Elevator Co.,* 214 Cal. 733, 7 P. 2d 1013; *Higgins v. Otis Elevator Co.,* 69 Ga. App. 584, 26 S.E. 2d 380; *Koch v. Otis Elevator Co.,* 10 App. Div. 2d 464, 200 N.Y.S. 2d 700; *Jones v. Otis Elevator Co.,* 234 N. C. 512, 67 S.E. 2d 492; *Durham v. Warner Elevator Mfg. Co.,* 166 Ohio St. 31, 139 N.E. 2d 10; *Wolfmeyer v. Otis Elevator Co.,* (Mo.) 262 S.W. 2d 18; *Banaghan v. Bay State Elevator Co.,* 340 Mass. 73, 162 N.E. 2d 807; *Delgaudio v. Ingerson,* 19 Conn. Supp. 151, 110 A. 2d 626; *Westinghouse Electric Elevator Co. v. Hatcher,* 133 F. 2d 109; *Pastorelli v. Associated Engineers, Inc.,* 176 F. Supp. 159.

Otis next urges that there was insufficient evidence to support a jury finding that the person observed on the Sperling premises just prior to the accident was an Otis employee. Evans testified that on the morning of the accident, while standing ten feet from the elevator, he observed a person whom he identified as an "Otis employee" in the Sperling store; while Evans did not know this person, he recognized him as an "Otis employee" by reason of the uniform which he wore, "a uniform with the name 'Otis' on the uniform"; this person entered the elevator, rode it up and down, talked to some Sperling employees and then left the premises. No other

Sperling employee testified either as to the identity of or to the fact of the presence of such person. Sperling employees did corroborate Evans' testimony insofar as his observation of what the person did on the date of accident was consistent with the usual routine practiced on other occasions by Otis' employees when the elevator was being examined and there was testimony that some Otis' employees did wear uniforms which bore Otis' insignia over the left shirt pocket. In *Petrowski v. Philadelphia & Reading Railway Co.*, 263 Pa. 531, 107 A. 381, a twelve year old boy was injured when negligently chased from a moving train by a person allegedly a railway company employee. The only evidence of the identification of this person as a railway company employee was that the person who chased the boy carried a club and flag and wore overalls and a cap with a shiny black band around it. In considering whether this evidence was sufficient to permit submission of the identity question to a jury, this Court held that when a person, costumed in the garb usually worn by railway employees and equipped as such employees are generally equipped, is observed in the performance of duties consistent with such employment at a place where such duties are normally performed, such evidence, in the absence of compelling evidence to the contrary, is sufficient to sustain a finding that the person was in fact a railway company employee. See also: *Bickley v. Philadelphia & Reading Railway Co.*, 257 Pa. 369, 373, 101 A. 654; *Dunne v. Pennsylvania R. R. Co.*, 249 Pa. 76, 78, 79, 94 A. 479. In the case at bar, a person in a uniform, bearing an "Otis" insignia, was observed at a place where Otis employees ordinarily performed their duties and the observed activities of this person were consistent with duties usually performed by Otis' employees. While the evidence in this regard was not overwhelming it was

sufficient to justify the trial judge in submitting the identity question to the jury.[2]

Otis' third argument is that Evans did not prove a defective or dangerous condition discoverable by reasonable examination or inspection. This argument is without merit. At trial, Evans urged, inter alia, that the cause of the jarring and stoppage of the elevator was a contact which took place between the protruding right-hand[3] bottom sideboards of the descending elevator and the ascending counterweight, a contact which took place while the elevator was between the first and second floors. Several days prior to the accident, Coulter, Evans' fellow-employee, noticed that the sideboards on the bottom right-hand side of the elevator cage were loose, and, with the application of pressure, would extend and protrude at least three inches beyond the cage edge. When the elevator was descending, the counterweight normally passed within two or three inches of the cage edge at a point between the first and second floors. Some testimony indicated that shortly before the accident the elevator started to vibrate and the boards rattled and that, just before the elevator stopped, there was a "scraping" sound. Both Evans and Coulter testified that the collision or contact took place on the *right-hand side,* not, as Otis maintained, on the *right front* of, the elevator.

Subsequent to the accident, Mr. Geise, Evans' expert, examined the elevator and the manner of its operation. Responding to a hypothetical question, Geise, testified that, in his opinion, the cause of the collision or contact was the protrusion of the elevator sideboards into the path of the ascending counterweight. In corroboration of this opinion, it is signifi-

---

[2] The evidence to the contrary lacked compulsive strength.

[3] As an occupant of the cage would face the front of the elevator.

cant that Otis submitted to Sperling a bill for repairs *made to the elevator after the accident* and that bill included services rendered in *refastening the side of the cage.* Geise further testified that "such defects should have been readily ascertained by a competent inspector but that the danger would not be apparent to someone who was not familiar with the location and operation of the counterweight". The record also discloses that it was not unusual for Otis' inspector to enter the elevator shaft to examine and oil the guides upon which the counterweight and elevator cage ran. In view of this testimony, the jury could reasonably have found that a reasonable inspection and examination by Otis, pursuant to its written agreement, would have disclosed a defective and dangerous condition of the right-hand sideboards of the cage.

Francis Connell, the Otis service inspector who ordinarily inspected the Sperling elevator, testified, on cross-examination, that "the boards [the roof boards] through a period of years and deterioration were starting to shake, rattle." The loose and dangerous condition of these roof boards could reasonably be inferred from the fact that the impact which stopped the elevator was not severe and that the board, which fell, would not have fallen had it been securely fastened. Otis argues that the condition of the roof boards was neither observable nor discoverable by a visual inspection and to require that Otis examine all the roof boards would be unreasonable. However, danger signals, when heard, cannot be ignored, even though the condition be not observable on visual examination. The boards, both side and roof, shook, rattled and vibrated when the elevator was in motion and, while the actual condition of the boards might not have been observable at first glance, the noises and sounds which emanated from these boards

were of such warning nature as to demand a further and more careful examination. Under this record, the jury could reasonably have inferred that had Otis' inspector carefully examined the condition of the roof boards, of which he had audible notice of possible danger, he would have seen a defective condition which constituted a real danger to passengers on the elevator.

A study of this record indicates that Otis, by reason of its contractual undertaking with Sperling to inspect and examine, at periodic intervals, Sperling's elevator, owed a duty to third persons, including Evans, and that by reason of its failure to discover, by a reasonable inspection and examination, the defective condition of both the roof boards and sideboards of the elevator cage Otis breached its duty to Evans. Whether Evans' injuries be attributed to a contact of the protruding loose sideboards of the cage with the ascending counterweight or to a defective condition of the roof boards, both conditions could and should have been ascertained had Otis properly examined and inspected the elevator in accordance with its agreement. The evidence of record amply supported the jury verdict in favor of Evans and against Otis and the court below properly refused Otis' motion for judgment n.o.v.

Otis next challenges the refusal of the court below to grant a new trial. Otis wants a new trial both as to Evans and Sperling and to that end has filed separate appeals; one is from the judgment in favor of Evans (Appeal No. 387) and one is from the judgment in favor of Sperling (Appeal No. 390). Each appeal will be examined separately.

## Motion for a New Trial as to Evans

Otis assigns the following reasons for a new trial as to Evans: (1) that the verdict was against the

weight of the evidence; (2) that the court erred in its rulings on the admissibility of certain evidence; (3) that the court erred in refusing to require that Evans produce certain statements at the trial.

In determining whether Evans' verdict was against the weight of the evidence, we consider *all* the evidence and assess its weight to decide whether the court below abused its discretion in refusing a new trial: *Grippo v. Pennsylvania Truck Lines, Inc.*, 402 Pa. 1, 3, 165 A. 2d 618; *Kiser v. Schlosser*, 389 Pa. 131, 132, 132 A. 2d 344.

In accord with the pleadings and proof and under the guidance and instructions of the court, the case was submitted to the jury on two possible theories, the cause of the collision of the elevator and the condition of the roof boards of the cage. As to the first theory, Otis argues that its version of the cause of the collision, i.e., the forward displacement of the right front corner post of the cage caused it to come in contact with the gate post, was the only version acceptable under the evidence and, since the court below accepted that version,[4] a new trial should have been awarded. The fallacy of that argument lies in the fact that the trial court, even though possibly impressed with Otis' version of the cause of the collision (with or without justification), refused Otis' motion for a new trial because the jury could have very properly found liability on the ground that the defective or dangerous condition of the roof boards of the cage should have been discovered and ascertained by Otis. The testimony concerning the condition of the roof

---

[4] This contention is based on Judge PINOLA's language in his opinion for the court en banc: "The jury found, no doubt that the elevator became wedged when the front corner post struck the gatepost and that jar caused the small board to fall from the roof of the elevator and strike . . . [Evans]."

boards of the cage, from Evans' viewpoint, has already been set forth in this opinion. Otis introduced no testimony to show that these roof boards were not loose or insecurely fastened. Otis urges that, in view of Evans' testimony that he "heard the cracking of boards and a board came and hit . . . [him] on the head", the conclusion to be drawn from the falling of the roof board is that the board was broken loose by the impact of the collision and not by the fact that it was loose or insecurely fastened. It is evident from this record that the testimony in this respect was conflicting but it is also equally clear that the evidence did not preponderate in Otis' favor. Under such circumstances, we are not warranted in declaring that the court below abused its discretion in refusing a new trial: *Jones v. Williams,* 358 Pa. 559, 564, 58 A. 2d 57.

Otis next assigns as error certain rulings of the trial court on the admissibility of evidence. At trial, Otis called Spaulding, its Wilkes-Barre office manager; through him, Otis sought to show that Otis had three types of service contracts, that the type represented by the Otis-Sperling agreement merely obligated Otis to clean, oil and adjust (COA) certain minor parts of the elevator and did not obligate Otis to inspect the elevator or report on its condition to Sperling. To this testimony there was objection because such oral testimony was not admissible in view of the clarity and unambiguity of the provisions of the agreement, and because there was no proof that Sperling had any knowledge of the three types of agreements nor that the parties had any negotiations in that respect. The trial court disallowed such proof, the terms of the agreement being clear and free from ambiguity.

Whether the parol evidence rule is applicable is a matter for the court to determine: *Keleher v. La-*

*Salle College,* 394 Pa. 545, 551, 147 A. 2d 835. Otis argues that, since Evans was a stranger to the agreement, the parol evidence rule is inapplicable: *Badler v. L. Gillarde Sons Co.,* 387 Pa. 266, 271, 127 A. 2d 680; *Roberts v. Cauffiel,* 283 Pa. 64, 68, 69, 128 A. 670. Those cases are inapposite; the law imposes upon Otis a duty as to Evans by reason of Otis' undertaking under the agreement and Evans cannot be said to be a stranger to this agreement nor do his rights arise dehors this agreement. Sperling, a party to the agreements, maintains that it "employed Otis to inspect and service the elevator" and that it relied upon Otis in that respect. Had Sperling sued Otis the parol evidence rule would have barred this testimony; under the peculiar circumstances herein presented, the rule should preclude such testimony as to Evans. What Otis sought by Spaulding's testimony was an interpretation of the clear and unambiguous language of this agreement to suit its own purpose. This agreement was prepared and drafted by Otis. It would be strange indeed to permit Otis now to introduce its conception of what the agreement was intended to mean when the language of the agreement so clearly reveals the understanding of the parties at the time the agreement was executed. The trial court did not err in refusing this offer of testimony.

Otis alleges that the trial judge erred when he refused to strike out certain portions of Evans' testimony on the cause of the collision. On direct examination, Evans testified that the collision occurred on the right-hand side of the cage and was caused by the sideboards of the cage coming in contact with the ascending counterweight; that, while he did not actually see this contact, he reached that conclusion when, after the accident, he examined the elevator shaft and made certain measurements. No objection was made to the questioning which elicited

these responses. In fact, upon cross-examination, Otis pursued the same line of questioning and not until it became evident that such line of questioning adversely affected Otis was any request made to strike such testimony, a request refused by the trial judge. Discussing this assignment of error, the opinion writer for the court en banc stated: ". . . the line of demarcation between matters of fact and of opinion is frequently so indistinct that the admissibility of the testimony is largely a matter of the trial court's discretion, and even if technical error has been made, there will be no reversal in the absence of prejudicial error". We agree with that statement. Otis failed to object in the first instance to such questioning and then pursued the same line of questioning itself. Under such circumstances, any error, if there were error in the reception of such testimony, would not constitute reversible error. A party cannot sit idly by during the introduction of evidence both by the adversary and itself and then when the responses are not to its liking attempt to erase from the record such evidence. This assignment of error is meritless.

It is next suggested that the trial court erred in not permitting Otis to call Geise, Evans' expert, as its own witness in defense. Geise was called by Evans in the capacity of an opinion or expert witness at which time he was examined and cross-examined at great length.[5] As part of its case, Otis wanted to call Geise both as its own opinion or expert witness and as a factual witness. Geise elected to exercise his right and privilege not to testify as Otis' opinion or expert witness and the trial judge recognized his right to refuse to so testify: *Pennsylvania Company, etc. v. Philadelphia*, 262 Pa. 439, 441, 105 A. 630. The

---

[5] Geise's direct examination covers twelve pages and his cross-examination covers sixteen pages of the record.

trial judge also refused permission to Otis to examine Geise factually. Otis' counsel was given full and complete opportunity to examine Geise and an examination of the record will indicate that full advantage of that opportunity was taken and Geise was examined at great length. On the state of this record, it was clearly within the discretion of the trial judge whether further, and for the most part cumulative, evidence on Geise's part was to be received (*Ries v. Ries' Estate,* 322 Pa. 211, 220, 221, 185 A. 288; *Joseph v. Krull Wholesale Drug Co.,* 147 F. Supp. 250, 259) and we find herein no abuse of such discretion.

Lastly, Otis attacks the failure of the trial judge to order Evans to produce a statement allegedly given by him to Sperling's representative. The Act of 1798 (1798, Feb. 27, 3 Sm. L. 303, §1, 28 PS §61)[6] provides that a court may order the production of books or writings which contain evidence pertinent to the pending action where due notice is given and good and sufficient cause shown; for failure to comply with such order, a nonsuit or default judgment may be entered against the recalcitrant party. One of the procedural requirements of this Act is that a party who desires to avail himself of the provisions of the Act must seek a rule on his adversary to produce the designated documents *before trial*: *McDermot v. U. S. Insurance Co.,* 1 S. & R. 357; *Rose v. King,* 5 S. & R. 241, 244, 245; Goodrich-Amram, Depositions and Discovery, §4005, §4006, p. 63. In the case at bar, Evans

---

[6] This Act applies only to the production of books and writings *at trial* (*Whetsel v. Shaw*, 343 Pa. 182, 22 A. 2d 751; *Peoples City Bank v. John Hancock Mutual Life Insurance Co.*, 353 Pa. 123, 130, 44 A. 2d 514) and is subject to a strict construction (*Whetsel v. Shaw*, supra). Moreover, it has been intimated that the Act is inapplicable in tort actions: *Morgan v. Watson*, 2 Wharton 10; *Harris v. Lewis*, Wharton's Digest, 2d Ed., 1829, p. 631; *Logan v. Penna.*, 132 Pa. 403, 19 A. 137).

was not served with any notice to produce nor was a rule sought *prior to the trial.* It was not until trial and then only when Evans had completed his testimony and rested his case that Otis sought to invoke the provisions of this Act. Otis' demand for the production of the requested documents came entirely too late and was properly refused by the trial judge. In view of our conclusion that Otis' demand was untimely, we need not consider whether the notice was in itself defective, whether good and sufficient cause under the Act was shown or whether the information sought was privileged.

Otis' reasons for a new trial as to Evans are without merit and the appeal from the verdict for Evans on this ground is not well taken.

Motion for a New Trial as to Sperling

Otis contends that the jury verdict in favor of Sperling is against the law, the evidence, and the weight thereof and that the court below abused its discretion in refusing a new trial. Evans and Sperling take the position that these contentions were not raised in the court below and, therefore, cannot now be considered.

After rendition of the verdicts in the court below, Otis moved for judgment n.o.v. and a new trial. In support of its motion for a new trial, Otis originally assigned four reasons, later amplified by the addition of fifty-eight other reasons, of which nine were subsequently withdrawn. Of all Otis' reasons, only two reasons could possibly relate to the Sperling verdict and both reasons, in effect, alleged that the trial judge erred in instructing the jury that a separate verdict against Sperling could not stand. Such an instruction was entirely proper. When Otis joined Sperling

as an additional defendant, it did so not upon any theory of sole liability to Evans but upon the theory that Sperling was either jointly liable with Otis or liable over to Otis. Under such circumstances, Sperling could not have been held liable on any theory of sole liability to Evans: *Shaull v. A. S. Beck New York Shoe Co.*, 369 Pa. 112, 115, 85 A. 2d 698; *Zachrel v. Universal Oil Products Co.*, 355 Pa. 324, 330, 331, 49 A. 2d 704.

In drafting a motion for a new trial, the reasons assigned should be set forth with such clarity that both the court and the adverse party may be informed of the import of such reasons and given sufficient opportunity to meet them. Viewed in this light, Otis' motion for a new trial gives no notice that the verdict rendered in favor of Sperling was being attacked and would lead one to believe that only the Evans' verdict was being challenged. In fact so misleading was the motion that Sperling neither participated in nor was it represented at the argument in the court below on the motion for a new trial. The opinion of the court en banc indicates that it was not aware of nor did it consider the course of action upon which Otis now bases this appeal. The court below had no opportunity to pass on the reasons assigned on this appeal and we cannot consider that which was not raised or considered in the court below: *Skovran v. Pritz*, 386 Pa. 425, 430, 126 A. 2d 456; *Finnerty v. Darby*, 391 Pa. 300, 313, 138 A. 2d 117.

After a careful consideration of this record and the arguments presented by counsel, we are satisfied that both Otis' motion for a judgment n.o.v. and a new trial as to Evans are without merit and that Otis' motion for a new trial as to Sperling cannot on the state of this record be considered.

Judgments affirmed.