## Gaster v. Elderkin

*Dale A. Betty*, for plaintiff.
*John M. Cleary*, for defendants.

LIPPINCOTT, *J.*, December 6, 1977—Richard L. Elderkin and Claire H. Elderkin, his wife, have appealed from our decree of September 19, 1977, dismissing exceptions to our prior adjudication and order. On September 3, 1976, this court found, after considering all testimony, that Gerald W. Gaster, the builder, had obtained for the Elderkins an adequate supply of potable water and had thereby fully completed his contract to construct a house for the Elderkins. We directed payment to the Elderkins of $352 as damages for costs of testing, payment of one-half of the total costs incurred in the appeal to the Supreme Court by each party, and ordered the release of the balance of an escrowed construction money fund to Gaster.

We have been advised that the issues to be argued on appeal are whether the court erred in (1) denying any relief for damages other than the sum of $352 representing costs spent in testing the well, and (2) finding that Gaster had fully completed his contract to construct a house for the Elderkins.

A brief review of this protracted litigation is required. On January 16, 1963, the parties entered into a contract whereby Gaster agreed to sell a one-acre lot in a development in Spring Valley, Middletown Township, to the Elderkins and to construct thereon a ranch-type dwelling for a total consideration of $26,430. On January 31, 1963, the Elderkins took title to the property and signed a construction agreement and mortgage whereby they were to pay the sum of $20,430 on a stage payout for construction of the new home. The El-

derkins paid Gaster the sum of $16,344 leaving a remaining balance of $4,086, which has been held in escrow pending the outcome of this litigation.

Under the agreement, Gaster was to supply water by installing a private, individual well system. At the time the Elderkins took possession of the premises, the house was substantially completed except for the water supply system which was completed several weeks thereafter. However, the water was not potable. Gaster offered to drill another well at his own expense, but this offer was refused by the Elderkins unless Gaster would guarantee the quality of the water. Thereafter, the Elderkins demanded that public water be brought to the property. Such action would have entailed a cost of approximately $13,795.

Actions were subsequently instituted by both parties, consolidated, and heard before the Honorable Paul R. Sand. The initial phase of the litigation culminated in an appeal to the Supreme Court which held, in a landmark decision, that the implied warranty of habitability imposed on a vendor-builder the duty to supply purchasers with potable water: Elderkin v. Gaster, 447 Pa. 118, 288 A. 2d 771 (1972). No damages were considered by the Supreme Court and the case was remanded for further proceedings consistent with its opinion.

On December 14, 1973, Judge Sand heard further evidence on the question of relief for the Elderkins and ordered Gaster, at his own cost including the costs of testing, to drill a new well to a sufficient depth to obtain an adequate supply of potable water. No testimony was produced at that hearing indicating the difference at the time the bargain was made between the value of the house bargained for and the value of the house delivered. A

further hearing was set for February 15, 1974, at which time the court directed to be produced additional evidence of the results of the drilling and demonstrating the difference, at the time the bargain was made, between the value of the house bargained for and the value of the house delivered. This order was appealed to the Supreme Court by the Elderkins, but was quashed on January 27, 1975, as interlocutory.

On June 27, 1975, the Elderkins again came before the court[1] and requested relief. However, no testimony was presented at that time concerning damages. On that date, the court entered an order requiring that all drilling and testing be completed within 60 days from June 27, 1975, and that the matter be returned to the court for further hearing on September 9, 1975. Thereafter, Gaster drilled a new well and obtained an adequate supply of potable water.

No additional evidence has been presented by the Elderkins concerning damages. On September 3, 1976, the parties having specifically agreed that this court need not make a formal adjudication, arguments were heard and upon consideration of the record, testimony, exhibits, and briefs of counsel, an order was entered by this court. Exceptions were filed by the Elderkins on September 23, 1976.

The issues presented by those exceptions only involved one of the two questions now raised on appeal, namely, whether damages for the breach of warranty of habitability should include damages for inconvenience and certain out-of-pocket expenses. The issue as to whether Gaster had failed in

1. Judge Sand had become ill and retired in the meantime and the matter was heard by Judge Edwin E. Lippincott, II.

any way to complete the contract to construct a house for the Elderkins was never raised before the court en banc.

The Elderkins contend that court erred in not permitting damages for inconvenience and vexation. The measure of damages for breach of warranty is normally the difference at the time and place of acceptance between the value of the property accepted and the value it would have had if it had been as warranted. The court continuously requested and directed that evidence be presented in accordance with such standard by the Elderkins. However, the record is barren concerning such relief.

While we recognize that in a proper case, incidental and consequential damages may also be recovered, counsel for the Elderkins has not cited, nor has this court been able to discover any case in this jurisdiction, in which no personal injury was involved, permitting recovery for such damages. Other jurisdictions have declined to do so in similar cases.

In Rogowicz v. Taylor and Gray, Inc., 498 S.W. 2d 352 (1973), the Court of Civil Appeals of Texas held that damages may be recovered for mental anguish only if it is shown that the anguish is a necessary and natural result of the breach of warranty as would be within the contemplation of the parties or reasonably foreseeable by the seller at the time the contract is made. The court went on to hold as a matter of law, that the defective foundation of the house involved was not the proximate cause of the alleged damages claimed for emotional distress and illness in that such a result or some similar one was neither within the contemplation of the parties

nor reasonably foreseeable at the time of the making of the implied warranty. The test of foreseeability is in accordance with the rule recently set forth by our Superior Court in R. I. Lampus Co. v. Neville Cement Products Corp., 474 Pa. 199, 378 A. 2d 288 (1977).

Accordingly, we find that the Elderkins have not sustained their burden of proof in accordance with the aforesaid rule. No evidence was presented of specific monetary damages incurred by the Elderkins in obtaining potable water from another source and storing it in a holding tank. Furthermore, even if the Elderkins had presented sufficient evidence, we believe that they failed to mitigate such damages by their persistent refusal to permit Gaster to drill another well. We find this to be especially persuasive in light of the evidence that the other wells in the development produced potable water and ultimately, when permitted, Gaster dug a satisfactory well.

The Elderkins have also requested compensation for the installation of a water conditioner and neutralizer which was attached to the water system in the house. Neither the construction contract nor the testimony presented indicates that Gaster at any time agreed to install such equipment or to provide the chemicals necessary for its operation. To the contrary, such items are normally installed by a party in order to provide for his own convenience in making the water soft and eliminating the various chemicals therein. The costs of such a subjective decision should not be taxed against the builder, and we do not believe he has the obligation to do so by virtue of any implied warranty. Furthermore, no evidence to support such claims was

presented by the Elderkins. For these reasons, the claims were disallowed.

Finally, the Elderkins now claim that the finding by the court that Gaster had fully completed his contract to construct a house for plaintiff was error. As earlier indicated, such argument was never made before the lower court, nor raised in the briefs submitted by counsel. No objection was taken to such finding. The argument is without merit and, in any event, the issue has been waived on appeal. See Pa.R.C.P. 1038 and 1518; Pa.R.A.P. 302(a); Evans v. Otis Elevator Co., 403 Pa. 13, 168 A. 2d 573 (1961).

For the aforesaid reasons, we entered our order of September 19, 1977.