## Standard Bank of Canada *v.* Allegheny Lumber Co., Appellant.

*Negotiable instruments—Sight drafts—Discount by drawee bank —Holder in due course—Foreign attachment—Right of drawee bank to fund.*

Every holder of a negotiable instrument is deemed prima facie to be a holder in due course, but when it is shown that the title of any person who has negotiated the instrument is defective, the burden is on the holder to prove that he, or some person under whom he claims, acquired the title as holder in due course.

A bank which discounts a sight draft and places the proceeds to the credit of a drawer, is a holder in due course for value, and is entitled to the fund subsequently received from the payee of the draft.

Argued April 27, 1921. Appeal, No. 118, April T., 1921, by defendant, from judgment of C. P. Allegheny County, April T., 1918, No. 4, on verdict for plaintiff, on feigned issue in the case of the Standard Bank of Canada v. Allegheny Lumber Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Feigned issue to determine ownership of fund in hands of garnishee. Before CARPENTER, J., without a jury.

The facts are stated in the opinion of the Superior Court.

The court entered judgment in favor of the plaintiff. Defendant appealed.

*Error assigned,* among others, was the order of the court.

W. D. *Stewart,* of *Thorp & Stewart,* for appellant.

*George D. Wick,* and with him *Reed, Smith, Shaw &
Beal,* for appellee.

OPINION BY HEAD, J., July 14, 1921:

On August 13, 1917, E. J. Moorse drew a sight draft
payable to the order of the Standard Bank of Canada,
the plaintiff, the drawee being the Allegheny Lumber
Company in Pittsburgh, the appellant. The amount
called for in the draft was $252.90. On the following
day, August 14th, this draft was taken by the drawer to
the plaintiff bank, the payee named, and there discount-
ed for his benefit, the proceeds, to wit, $252.25, being
placed to his credit in his open checking account as a de-
positor in that bank. The payee appellant forwarded
this draft in the usual course of business to the Farm-
ers' Deposit Bank of Pittsburgh for presentation and
payment. On August 17th the draft was presented to
the drawee and promptly paid. Immediately thereafter
the drawee, which had just paid the draft as presented,
began a proceeding in foreign attachment in the Com-
mon Pleas of Allegheny against Moorse, the drawer of
the draft in Canada, with notice to the Farmers' Deposit
Bank as garnishee. Interrogatories were filed, directed
to the officers of the plaintiff bank in Canada and after
the answers had come in the case—a feigned issue to de-
termine the ownership of the fund—was tried by agree-
ment of counsel by a judge without a jury. The findings
both of fact and law filed by the trial judge were in
favor of the plaintiff. Exceptions to the same were ar-
gued before the court in banc and a judgment was finally
entered deciding that the bank was the owner of the fund
in controversy and this appeal followed.

It is to be remembered the case must be disposed of
under the laws of the State of Pennsylvania as applied
to the questions of fact raised by the record and disposed
of by the trial judge. It cannot be denied the plaintiff

bank, the payee in the bill of exchange, became the holder
of the bill as that term is defined by our Negotiable In-
struments Act.   If it was a holder in due course, then
the statute itself fixes its legal position.   Section 59 of
the act declares: "Every holder is deemed, prima facie,
to be a holder in due course," etc.   The presumption thus
created has evidential value, and, unless there be proof
to warrant a finding to the contrary, the statute estab-
lishes the proposition that the holder was a holder in
due course.   This situation cannot be successfully as-
sailed by the citation of general principles evolved from
the old law merchant as it existed before our statute;
or from judicial opinions in jurisdictions where there is
no such statute; or in cases where the record is barren of
proof, and the conclusion must rest on proper inferences
to be drawn from what is presented to the court in the
particular case.

Now we have first of all the statutory presumption
that the payee bank, being a holder of a negotiable in-
strument, was a holder in due course.   We have next
positive evidence, uncontradicted, affirming that the
bank had discounted the negotiable sight draft and that,
the proceeds resulting from that transaction, were
placed to the credit of the drawer just as would have oc-
curred had he deposited cash, checks on other banks, the
proceeds of his own note, or the like.

The entire argument of the appellant is an effort to
support the conclusion that the fund, when created by
its payment of the draft, was the property of the drawer
and of no one else.   It endeavors, by a series of assump-
tions, to supply the necessary proof without the aid of
either legal presumption or actual evidence except as to
one single matter to which we will refer in a moment.
In the very opening of the printed argument, in speaking
of the deduction made by the bank as its discount charge,
the appellant declares that it was "presumably" a col-
lection charge.   We know of no foundation upon which
that presumption can rest.   It is said that because the

draft was at sight, no interest charge could enter into the transaction. The act of discount, under the evidence, took place in Canada. It became neccssary to forward the negotiable instrument to Pittsburgh for presentation and payment and to return the money, if paid, to the bank in Canada. That necessarily would involve several days during which period the drawer was at liberty to use the proceeds of the discount, and manifestly there would be some compensation due to the bank for providing the funds necessary for that purpose.

But it is argued that the whole transaction in any event was but a paper one, rather than a real one, because the depositor in the bank had not actually drawn against the money placed to his credit as a result of the discount. This again proceeds on an assumption without regard to the state of the evidence. There is on record an itemized statement of the entire account of Moorse with the plaintiff bank from the 2d to the 15th of August of that year, both dates inclusive. Now it is true an examination of the debit and credit balances thus shown would indicate there remained, at the close of business on the 14th of August, a balance in favor of the depositor a little larger than the sum passed to his credit as a result of the discount. Hence it is argued the depositor did not actually draw out the money and therefore the credit was but nominal. But if we examine a little farther we discover that on the 15th of August the depositor drew against his account between $11,000 and $12,000. These checks wholly absorbed all of the credits of the depositor down to that date including the one we are considering. This is made clearly to appear because, in order to meet those checks on the 15th of August, he was obliged to secure additional credits in the sum of more than $10,000, about one-half of which was raised, as the account shows, by a further discount. Now the draft in question was not paid in Pittsburgh until August the 17th. How then can it be urged that at that time the bank had furnished nothing but a paper

credit not used by the depositor, and therefore was not a holder for value but only a collecting agent? Thus far it seems plain to us the presumption created by the statute—that the plaintiff was a holder in due course, which is but another way of saying he was a holder for value,— has in no way been rebutted. Further, that presumption is supported by all of the positive evidence in the case and all the inferences to be fairly drawn therefrom; unless the item of evidence to which we now advert, changes the whole nature and character of the transaction with a retroactive effect that carries it back to the very first steps of the creation of the credit following the discount of the draft.

In the final interrogatory the bank officer was asked if he could state anything else of advantage to either party other than the knowledge elicited in his previous and more specific answers. He replied, "Nothing of any consequence except that for the convenience of the bank in its bookkeeping the amount has since been charged back to E. J. Moorse, Jr., pending the final disposition of this case." This answer, when interpreted by the able counsel for appellant, becomes the cornerstone for his proposition that it conclusively demonstrates that in spite of everything that had occurred, the plaintiff bank was but a collecting agency throughout the entire transaction. We have already seen that the fund, the title to which is in controversy, was created by the payment of the draft by the drawee on August 17th. With that payment the money took the place of the negotiable bill of exchange and the title of a holder for value of that bill, at the time it was paid, was transferred to the fund. We have pointed out that as early as the 15th of August the depositor had actually drawn all of the money in his account including the proceeds of the draft and so much more that he was obliged to obtain further credits in a considerable sum. At the time the fund was created then it seems clear to us, reasoning from every evidential fact in the case, the money in the bank had passed to the

222, (1921).]          Opinion of the Court.

drawer of the bill as fully and completely as if it had paid cash over its counters for the same, and its position as the holder for value, first of the negotiable instrument and next of the fund created by its payment, is too well supported to be successfully questioned. The record does not show when the draft was charged back to the depositor's account in Canada, nor does it show the nature of that charge, made, as the evidence declares, for the convenience of the bank in its bookkeeping. It might be interesting to inquire, were it relevant, whether or not the bank could support such a charge against the will of its depositor after the instrument it had discounted had been paid, on the ground that some one without right had attached the money in the bank before it was returned from Pittsburgh.

We think the circumstance wholly insufficient to support the conclusion that is made to rest upon it, and its true significance, if it had any, would necessarily require development by further testimony than any we have in this controversy. On every question raised we are of opinion the weight of both law and evidence is with the findings of the learned court below and the assignments of error must therefore be overruled.

Judgment affirmed.