Badler, Appellant, *v.* L. Gillarde Sons Company.

Argued November 14, 1956.   Before JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Earl Jay Gratz,* with him *Gratz, Sperling & Fitzgerald,* for appellant.

*Louis J. Goffman,* with him *Ramon L. Posel, C. Lawrence Cushmore, Jr., Wolf, Block, Schorr & Solis-Cohen,* and *White, Williams & Scott,* for appellees.

OPINION BY MR. JUSTICE JONES, December 29, 1956: This appeal is from an order of the court below set-

ting aside the service of a writ of foreign attachment and quashing the writ.

The plaintiff, M. J. Badler, a wholesale produce merchant of Philadelphia, instituted an action of assumpsit by writ of foreign attachment against the defendant, L. Gillarde Sons Company, a produce dealer of Chicago, Illinois, summoning as garnishee the South Philadelphia National Bank (now Central-Penn National Bank of Philadelphia).

When the writ was served, the garnishee had in its possession the proceeds of ten drafts, drawn by the defendant company on a South Philadelphia customer, which the defendant had transferred to three banks in Illinois which, in turn, forwarded the drafts to the garnishee bank for presentation for payment by the drawee. On petition of the garnishee averring that it had no property of the defendant company in its possession, the court below issued a rule calling upon the plaintiff to show cause why service of the writ should not be set aside and the writ quashed. The plaintiff, by answer, denied the material averments of the garnishee's petition. Interrogatories were filed and depositions were taken by both parties relating, however, to only four of the drafts, the same being the drafts which the defendant deposited with the First State Bank of Libertyville, Illinois, which had forwarded them to the garnishee for presentation for payment. On the basis of the evidence so adduced, the court below found that the drafts in question were the property of the Libertyville bank and, accordingly, set aside the service on the garnishee and quashed the writ. It is that order from which the plaintiff brings this appeal.

Such an order, although interlocutory, is made appealable by the Act of April 26, 1917, P. L. 102, 12 PS §1108. Under the provisions of that Act and also Sec-

tion 1 of the general Act of April 18, 1919, P. L. 72, 12 PS §1165 (which made the testimony taken below a part of the record in all appellate proceedings), "we examine the proofs to see whether there is any evidence to warrant the findings of the trial court, or to sustain the action complained of (Hand's Case, 266 Pa. 277, 281); but, in making such examination, the prevailing presumption 'that everything was done rightly and according to law' (Brown v. Ridgway, 10 Pa. 42, 43) still holds and, since the Act of 1917 allows an appeal (like the one before us) from the refusal to quash a writ, which is an interlocutory order, the usual rule governing appeals from such orders applies, and the record must present plainly a clear abuse of discretion, before a reversal can be had": *Pasquinelli v. Southern Macaroni Mfg. Co.,* 272 Pa. 468, 476, 116 A. 372. See also Standard Pennsylvania Practice, Vol. 9, §379. The seeming distinction between an order quashing or refusing to quash *the attachment,* as distingished from *the writ,* which Standard Pennsylvania Practice, Vol. 9, §64, notes, is of no present pertinency.

From the evidence in the instant case (both documentary and testimonial), the learned hearing judge was warranted in concluding that the four drafts which the Libertyville bank forwarded to the garnishee for presentation for payment were the property of the bank and not of the defendant company, the drawer of the drafts. There was direct and positive testimony, which the court had a right to, and did, accredit, that the Libertyville bank gave the defendant company, as the drawer of the drafts, full and unqualified credit therefor immediately upon the defendant's delivery of them to the bank. See *Falk & Company v. South Texas Cotton Oil Company,* 368 Pa. 199, 206, 82 A. 2d 27.

The issue of ownership of the drafts depends for its resolution upon the facts relative to the intention of the parties and must, in last analysis, be so determined. As stated in *Michie on Banks and Banking*, Vol. 5A, §32a, "the rule is generally recognized that the determination of the question is controlled, in the absence of an express agreement, by the intention of the parties as shown by the attending circumstances." Here, the evidence produced by the garnishee (whose bounden duty it was to resist the attachment: *McCloskey v. Northdale Woolen Mills*, 296 Pa. 265, 267, 145 A. 846), coupled with the presumption of ownership accorded the holder of the negotiable instruments (see Act of May 16, 1901, P. L. 194, §59, 56 PS §139), justified the conclusion of the court below that the Libertyville bank was the owner of the drafts and consequently entitled to their proceeds. As also stated by Michie, loc. cit., supra, "The rule supported by the very decided weight of authority is that a deposit of a check, draft or other commercial paper in the ordinary course of business, whereby the depositor receives a credit as cash against which he may draw, *prima facie* operates to transfer the title to the bank, in the absence of a usage or custom, or of an agreement that the effect of the transaction shall be otherwise, or proof of circumstances from which such an agreement may be inferred." In the *Falk* case, supra, we reversed and set aside the service of a writ of foreign attachment and quashed the writ because the plaintiff had failed to overcome the presumption that the forwarding bank was the holder of the drafts in due course and, therefore, the owner thereof.

The plaintiff objects, however, that the testimony of the employee of the defendant company, concerning the intended payee of the drafts, and, likewise, the tes-

timony of the president of the Libertyville bank, respecting an accompanying deposit slip, was inadmissible, being in apparent denial of what the papers themselves purported to show, and that, consequently, the testimony was violative of the parol evidence rule.

As to the drafts themselves, which showed the Libertyville bank and the defendant company as joint payees thereof, the defendant's employee testified that, in filling in the draft forms, she had inadvertently used an "endorsement" rubber stamp instead of the payee stamp. The appellant contends that this testimony was incompetent for the reason that the drafts are negotiable instruments, "complete and regular on their faces" and "therefore, the sole evidence of the agreement and cannot be varied, altered or contradicted by parol unless it is proved by clear, precise and indubitable evidence that a portion of the writing was either omitted or stated as a result of either fraud, accident or mistake", citing *Pender v. Cook,* 300 Pa. 468, 473, 150 A. 892. While such is indeed a correct statement of the law as between the parties to the instrument, the present appellant's rights are those of an attaching creditor, and arise *dehors* the instruments; he claims no rights through the drafts themselves and is, in fact, a stranger to them. Parol evidence was, therefore, admissible to show the actual circumstances whereby the name of the defendant company was mistakenly included as an apparent joint payee with the Libertyville bank: *Roberts v. Cauffiel,* 283 Pa. 64, 68-69, 128 A. 670.

With respect to the remittance forms and the deposit slip concerning which oral testimony was also introduced, the notations thereon were not definitive contractual obligations or undertakings of the Libertyville bank but bits of evidence with bearing, of course, on the intent and effect of the particular papers but

the extent of whose probative value was for the trier of the facts to determine in the light of all of the evidence in the case. To such circumstances, the parol evidence rule has no applicability: *Hanauer v. National Surety Co.,* 279 Pa. 345, 348, 123 A. 863; see, also, *Martin v. Wilson,* 371 Pa. 529, 536, 92 A. 2d 193; *Kaufhold v. Taylor,* 360 Pa. 372, 376, 61 A. 2d 813. The testimony did not, therefore, offend against the parol evidence rule which binds the parties to a written agreement or ones claiming through such parties: *Roberts v. Cauffiel,* supra, and *Johnson v. Stewart,* 243 Pa. 485, 500, 90 A. 349.

The appellant tabulates what he terms "decisive differences between the *Falk* case and the present case." Such differences, however, will be found upon examination to be apparent rather than real. Indeed, the points of similarity between the two cases greatly exceed in their materiality the points of difference. In each case, the payee of the drafts was the bank wherein the drawer deposited them, the seeming appearance of joint payees of the drafts in the instant case having been competently and satisfactorily explained by oral testimony. The depositing drawer of the drafts received, in each instance, immediate and unconditional credit therefor against which he was entitled forthwith to draw. And, in neither case, did the payee bank endorse the drafts which it forwarded for payment. The factual differences between the *Falk* case and the instant case are minor and of no material significance. The one difference is that, in the instant case, the payee bank charged the drawer of the drafts with interest at five per cent on the amount of the corresponding deposit, credited to the depositor's account, from the time of its entry until payment of the drafts was received by the depository. The other difference is that, at one time, the payee bank in the instant case

had returned to the defendant at its request one of its drafts which had been deposited simultaneously with those here involved.

The fact that the bank complied with the depositor's request for the return of a particular draft did not establish a legal right thereto in the depositor but, rather, the bank's willingness to comply with the allowable request of its customer. Nor does the fact that the depositor's account was charged, *pro tanto,* for the returned draft make it any less the bank's property while in its possession. Compare *Standard Bank of Canada v. Allegheny Lumber Co.,* 77 Pa. Superior Ct. 222, 226.

The matter of the interest charge is even less significant. In the *Standard Bank of Canada* case, supra, where the ownership of the proceeds of a draft which had been discounted by the Canadian bank and forwarded to a bank in Pittsburgh for collection was in controversy, Judge Head, speaking for the Superior Court, said, with reference to the attaching creditor's contention that *the discount* was "presumably" a collection charge, "We know of no foundation upon which that presumption can rest." The fact that a bank receives compensation for the use of its moneys during the period between the deposit credit and the bank's receipt of payment for the deposited draft confirms, rather than refutes, that the bank had parted with its funds for acquisition of the draft. As observed in the *Standard Bank of Canada* case, supra, "manifestly there would be some compensation due to the bank for providing the funds necessary for that purpose." Whether the compensation is by way of initial discount or interest on the face amount of the deposit credit, the net effect is the same and the legal consequences are no different.

Order affirmed.

Mr. Justice Bell dissents.