## New Waterford Bank v. Morrison Buick, Inc.

*Mansell & McKee,* for plaintiff.
*Alvah M. Shumaker,* for defendant.

HENDERSON, J., August 23, 1965. — This matter is before the court on defendant's motion for a new trial and defendant's motion for judgment n. o. v. following a verdict in favor of plaintiff bank in the sum of $2,-865.48.

This was a case in assumpsit brought on a check. From the testimony, the jury could have found that a depositor of plaintiff bank borrowed money from plaintiff on a note secured by a chattel mortgage covering three unencumbered new automobiles; that the depositor and defendant were both franchised automobile dealers; that the depositor delivered an automobile to defendant; that defendant's treasurer signed a check of defendant made payable to the depositor in the amount of $2,865.48; that depositor made a deposit, including this check and other checks, with plaintiff bank; that in reliance thereon plaintiff bank marked

depositor's note "paid in full" and returned the note and chattel mortgage to depositor; that the amount of the note and chattel mortgage was deducted from depositor's account; and that when defendant stopped payment on the check in question, plaintiff bank was unable to recover the sum of $2,865.48 from its depositor, which has since gone through bankruptcy.

The check upon which suit is brought is a printed check carrying two signature lines under defendant's printed name, one signature line being followed by the word "Pres." and the second by the word "Treas." The second line thereof bears the signature of Anna V. Zuzow, and no signature appears on the first line.

Defendant introduced into evidence three exhibits concerning persons authorized to sign checks for defendant corporation, each one indicating to its own depository bank that the defendant corporation had passed a resolution authorizing W. L. Morrison and Anna V. Zuzow to execute checks on behalf of defendant. The exhibits also indicated to defendant's own depository bank that both signatures were required on all checks presented.

The case was submitted to the jury on the question of whether or not plaintiff was a holder in due course of the check in question, and instructed that if they found plaintiff to be a holder in due course, plaintiff was then entitled to recover; that if they did not find plaintiff to be a holder in due course, plaintiff was not entitled to recover, and that the burden of proving that plaintiff was a holder in due course was upon plaintiff.

The jury was instructed as to the requirements for a holder in due course as set forth in section 3-302 of the Uniform Commercial Code of October 2, 1959, P. L. 1023, with regard to the requirements of taking for value, as set forth in section 3-303, and with regard to the security of collecting banks, as set forth in section 4-208. Further, the jury was charged with reference

to notice to the purchaser of an instrument, as set forth in section 3-304, with regard particularly to matters of incompleteness or irregularity of the instrument itself under section 3-115.

Almost all of the reasons advanced by defendant in support of its motion for a new trial and its motion for judgment n. o. v. are based on the claim that the signature of the president of defendant corporation does not appear on the check in question. Defendant would have us hold that since the corporate resolution requires two signatures, then no one signature can be an "authorized" signature, and the case should be ruled by the laws covering unauthorized signatures. This is not correct, and we shall not rule the case on that law. The number of required signatures under the corporate resolution, as filed with its own depository bank, does not control, whether the signatures are authorized or unauthorized. A signature is either authorized or unauthorized, depending on whether or not the person signing has been given the power to sign, not whether this particular person is the sole one with power to sign or whether this person is just one of many who have the power to sign. The fact that the corporate resolution requires two signatures for the check to be honored by its own depository bank does not mean that no one signature can be an authorized signature.

The uncontradicted evidence on this point shows that the signature of Anna V. Zuzow, treasurer of the corporation, which does appear on the check, is one of two authorized signatures, and that the check itself was prepared by the proper officer of defendant in the normal course of defendant's business.

Throughout the trial, defendant took the position that plaintiff was bound by defendant's corporate resolution, which it had filed with its own depository bank, which resolution required two signatures on each corporate

check. We ruled throughout the case that, unless the appearance of the check itself was sufficient to put plaintiff on notice or duty to inquire, plaintiff bank was not bound by such resolution in the absence of knowledge of its existence, and no evidence was offered to show such knowledge or notice. By brief, defendant alleges this to be error but cites no cases on point. Defendant's brief, at page 6, however, agrees that the present law of Pennsylvania limits the operation of the bylaws as regulatory only among the members of the corporation. This would also apply to the corporate resolutions.

Defendant alleges that this case should have been ruled by the theory that there was no effective corporate signature on the check; that no corporate check of defendant was a valid corporate obligation unless it carried two signatures, and that, therefore, there was no authority for binding the corporation on this check, on the theory of St. Vincent College v. Hallett, 201 F. 471 (1912), in which case the Federal courts interpreted the law of Illinois on this question. However, a reading of that opinion will disclose that the general agency question discussed therein was based on unauthorized acts and unauthorized signatures. As has been pointed out, the uncontradicted evidence in this case was that the signature which appeared on the check in question was an authorized signature.

Defendant also relies on The Floyd Acceptances, 19 L. Ed. 169, as it is quoted in the St. Vincent College case, which is a Federal court interpretation of the New York law on this point. That quotation again specifically limits itself to the situation where no general agency has been created and where the acts were unauthorized, not ratified and without benefit to the corporation. This limitation effectively removes that decision from being controlling in the case at bar.

Defendant takes the position that this is not a check, again on the theory that it does not carry an authorized

signature. This has already been covered, but, further on this point, we might say that defendant's counsel and defendant's own expert witness on banking and commerce consistently referred to this paper throughout the case as a check. Under section 3-104(2)(b), the instrument upon which this suit is brought meets all requirements of a check.

It is defendant's position that plaintiff should have been on notice that this was an incomplete and irregular document on its face by reason of the signature line of the president being blank, even though a proper signature appeared on the other signature line. Testimony was taken on the question of whether this was such an irregularity or incompleteness as to put the plaintiff on notice. Bankers testified for plaintiff that many of their corporate bank accounts required only one of several authorized signatures, even though the checks used by such corporate depositors had more than one signature line thereon. The banking and commerce expert called by defendant testified that the bank for which he is legal counsel (it being defendant's depository bank) does have corporate depositor clients "whose corporate checks have two lines for signature", and whose corporate resolutions and agreements with the bank only required one signature on the checks in order for the checks to be valid; that such corporate checks executed with only one signature are perfectly good and would be honored; and that he knows of no Pennsylvania law which requires that in order for a check to be a valid corporate obligation, two signatures would be required thereon.

In view of the testimony on this point, the question was submitted to the jury as to whether plaintiff should have been put upon notice of some defect, by reason of the check only carrying one signature, and the jury was instructed that if they found that plaintiff should have been put upon notice of such defect

thereby, plaintiff could not be a holder in due course and could not recover. The jury's verdict indicates their finding in this regard.

Defendant cites Hamborsky v. Magyar Presbyterian Church (No. 1), 78 Pa. Superior Ct. 519 (1922), as controlling on the question of whether an instrument is incomplete. The court there said:

"It purports to be executed under 'the hand and seal of the Magyar Presbyterian Church, Scranton, Pa.,' but no seal is affixed; . . . It is obviously not an ordinary but an extraordinary transaction. . . ."

We do not hold this case to control the case at bar.

Defendant alleges an improper charge to the jury on the question of the shifting of the burden of proof, and cites therefor Penneys v. Segal, 410 Pa. 308. A reading of that case discloses the following language:

"In the instant factual situation it was most important that the jury understand where the initial burden of proof rested, if and when the burden shifted and, if the burden shifted, where the ultimate burden rested".

The Penneys case would be consistent in its facts with the case at bar, had plaintiff in the case at bar initially only placed the check in evidence to prove a prima facie case, and then rested. In that case, the burden would have shifted to defendant to go forward with the evidence. However, the burden of proof would have remained with plaintiff to prove that he was a holder in due course. That was not the case at bar. A review of section 3-307(2) and (3) clearly shows that this section is not applicable to the type of defense offered in this case. The type of defense referred to there is lack of authority, whereas in the case at bar, even though defendant alleged lack of authority as its defense, all of the proofs of the case are that the only signature on the check was an authorized signature. The code comment here is as follows:

"The purpose of the requirement of a specific denial in the pleadings is to give the plaintiff notice that he must meet a claim of forgery or lack of authority as to the particular signature. . . .

"It means that until some evidence is introduced which would support a finding that the signature is forged or unauthorized the plaintiff is not required to prove that it is authentic".

There is no testimony in the case at bar that this is a forged signature, and all of the testimony in the case at bar on the point is to the effect that the signature is an authorized signature. A distinction must be drawn between the burden of proof and the burden of going forward with the evidence. In the case at bar, the jury was not instructed that the burden was on defendant at any place to go forward with the evidence, but the jury was instructed with regard to the burden of proof, which was properly left with plaintiff.

It is defendant's further position that plaintiff was merely a collection agent under the provisions of the Negotiable Instruments Law of Ohio, then in force, and that the Uniform Commercial Code does not govern this case. Under section 1-105(3)(c) there can be no question but that this matter is covered by the Uniform Commercial Code presently in effect in the Commonwealth of Pennsylvania. An examination of the two laws shows that the result would be the same in any event, since the only difference on this point between the two is covered in section 3-307 of the Uniform Commercial Code, which deals with shifting of the burden of proof, which has already been covered. The question of plaintiff being only a holder for collection was decided under the Negotiable Instruments Law in Pennsylvania in Real Estate-Land Title & Trust Co. v. Butler, 296 Pa. 54 (1929), where the court held that the language used in the passbook and deposit forms "could not be construed as more than a contract

between plaintiff bank and its depositor . . .; the rule was in no sense made for the benefit of one in the position of the present defendants, and they cannot profit by it". We hold the same to be applicable to plaintiff in the case at bar.

In the case of Standard Bank of Canada v. Allegheny Lumber Co., 77 Pa. Superior Ct. 222 (1921), the court held that plaintiff bank was a holder for value, and not merely a collecting agent where the depositor had written checks which absorbed all credits with plaintiff bank.

In National Bank of Phoenixville v. Bonsor, 38 Pa. Superior Ct. 275, 279, 280 (1909), which was a case where a stop payment order against a check deposited in the bank caused depositor's account to be overdrawn, the bank, claiming to be a holder for value rather than an agent for collection, brought suit against the maker of the check. The court held that when the bank paid the check of its depositors, "it is fair to presume that this extension of credit was based upon the state of [the depositor's account], which included the very check . . . in question . . . [Hence] plaintiff bank clearly had a lien upon . . . [that] check for the amount thus advanced". See also Lightfoot v. Bunnel, 76 Pa. Superior Ct. 468 (1921). In M. J. Erisman v. The Delaware County National Bank, 1 Pa. Superior Ct. 144 (1896), the court held that if a depository bank applies the proceeds of a deposited item to depositor's antecedent debt owed to the bank, then the bank has given value to that extent.

Defendant has raised an objection to a statement made by the court concerning the court's recollection of the testimony of one of the witnesses. A review of that witness's testimony reveals that his initial testimony was so qualified by his later testimony that the court's recollection of the sum total of his testimony was correct. However, in its charge the court specifi-

cally told the jury, "You will recall what his testimony was", and we do not feel this to have been harmful to the case.

The balance of the objections raised by defendant go to legal questions already covered herein.

ORDER OF COURT

Now, August 23, 1965, defendant's motion for a new trial and defendant's motion for judgment n. o. v. are each overruled, and the prothonotary is directed to enter judgment on the verdict.

Powers, P. J., concurs with Judge Henderson's opinion.