## Dauphin Deposit Trust Co. v. E.C.E.C.S. Co., Inc.

*Marlin R. McCaleb*, for petitioner.
*James D. Flower*, contra.

SHUGHART, P. J., February 22, 1973.—On January 5, 1972, judgment was entered by plaintiff, Dauphin Deposit Trust Company (hereafter referred to as bank), against defendants, E.C.E.C.S. Co., Inc. (hereafter referred to as the corporation), J. Robert Krout and W. Wayde Kelly, on a promissory note containing a cognovit clause. Thereafter, on petition of Kelly, the court granted a rule upon plaintiff to show cause why judgment should not be opened and set aside as to him. Plaintiff filed an answer, depositions were taken and the matter was argued before the court.

Under our current case law, proceedings to open judgment are equitable in nature, being directed at the sound discretion of the court: Roche v. Rankin, 406 Pa. 92, 99 (1962). Parties seeking to open a confessed judgment on the basis of fraud must provide evidence which is clear, direct, precise and convincing: Sterling Electric & Furniture Co. v. Peterson, 409 Pa. 435, 440 (1963). Also see Smith v. Goodhart, 1 Cumb. 115, 117 (1951). The United States Supreme Court decision in D. H. Overmyer Co., Inc. of Ohio v. Frick Co., 405 U.S.

174, 92 S. Ct. 775, 31 L. Ed. 2d 124 (1972), however, has shed grave constitutional doubts that this quality of proof is proper. Therefore, for the purpose of this opinion, we will assume that the test for determining whether judgment should be opened is that set forth in Recommendation No. 37: Proposed Amendments to the Pennsylvania Rules of Civil Procedure Governing Confession of Judgment, The Legal Intelligencer, May 24, 1972, Proposed Rule 2959(e), which states, in part:

"If evidence is produced which in a jury trial would require the issues to be submitted to a jury the court shall open judgment."

We will consider the petitioner's testimony in the light most favorable to him to determine if he has presented evidence sufficient to require a jury trial.

The testimony in favor of opening judgment is solely that of the petitioner. His statements would indicate that he was enticed to sign as comaker of the note in question upon assurances by defendant Krout and George F. Myers, Senior Vice President of the Bank, that George C. Hoopy would also sign as a comaker of the note. It was allegedly in violation thereof that Myers allowed Hoopy to sign the note as an accommodation endorser to the instrument. Kelly's testimony would further indicate that he remained under the impression that Hoopy had signed as a comaker from the time the note was issued until December of 1970 when he was notified that he was being held liable for the entire amount of the note. No evidence was presented which would indicate that the note was incomplete in any respect, other than the signatures of the various comakers, at the time Kelly signed it.

The note is unquestionably a negotiable instrument under the Uniform Commercial Code (hereafter referred to as U.C.C. ), Act of April 6, 1953, P. L. 3, sec. 3-104, reenacted October 2, 1959, P. L. 1023, sec. 3,

12A PS §3-104(1), and is, therefore, subject to the provisions of that act. Further, since there is no evidence that the instrument was incomplete in any *necessary respect* at the time Kelly signed it, the note became negotiable when he affixed his signature to it: U.C.C., sec. 3-115, 12A PS §3-115. Comment No. 2 to U.C.C., sec. 3-115, 12A PS §3-115, states:

" 'Necessary' means necessary to a complete instrument. It will always include the promise or order, the designation of the payee, and the amount payable. It may include the time of payment where a blank is left for that time to be filled in . . ."

Therefore, the fact that Kelly allegedly left blank spaces above his name for Krout and Hoopy to sign, did not affect the character of the note as a complete instrument.

After Kelly signed the note, Krout allegedly signed as a comaker and Hoopy as an accommodation endorser. These additions, however, were not a material alteration within the meaning of U.C.C., sec. 3-407, 12A PS §3-407, Comment No. 1, to which states:

"Specific mention is made of a change in the number or relations of the parties in order to make it clear that any such change is material only if it changes the contract of one who has signed. *The addition of a co-maker or a surety does not change in most jurisdictions the contract of one who has already signed as maker and should not be held material as to him.*" (Italics supplied.)

We can find no Pennsylvania law which deviates from the majority view in this respect. Therefore, the addition to the note of a comaker and surety is not a material alteration which would discharge Kelly from liability.

The instrument itself indicates that Kelly signed as an accommodation maker and Hoopy signed as an accommodation endorser. Consequently, the bank's re-

lease of Hoopy did not impair any right of recourse Kelly might have because Hoopy could not be held liable to Kelly on the instrument: U.C.C., sec. 3-415, 12A PS §3-415; U.C.C., sec. 3-414, 12A PS §3-414; Pender v. Cook, 300 Pa. 468 (1930). See also U.C.C., sec. 3-606, 12A PS §3-606.

Kelly is therefore left with his personal defenses to the instrument under U.C.C., sec. 3-306, 12A PS §3-306. Since the bank dealt with Kelly, it cannot avoid these defenses on the basis of being a holder in due course: U.C.C., sec. 3-305, 12A PS §3.305(2).

Petitioner contends that his delivery of the promissory note was subject to the condition that Hoopy sign as a comaker and that the parol evidence rule is therefore inapplicable. The bank, on the other hand, argues that Kelly's defense is an attempt to reform the instrument and that the parol evidence rule qualifies Kelly's right to introduce evidence as to the alleged agreement.

Article III of the U.C.C. contains no provisions concerning the parol evidence rule. Therefore, the principles of law and equity as developed by our courts must determine the rules governing the admissibility of Kelly's evidence to a jury: U.C.C., sec. 1-103, 12A PS §1-103.

U.C.C., sec. 3-306, 12A PS §3-306(c), provides for the defenses of nonperformance of a condition precedent and delivery for a special purpose. Petitioner alleges that when he delivered the instrument, it was to be negotiated only upon the condition that Hoopy also sign as a maker. He also alleges that the bank was aware of and accepted this condition. His defense is therefore that the bank issued the loan in violation of this condition precedent and that he is thereby discharged from his liability as a maker.

The relevant question is: What effect does the parol

evidence rule have upon the defense of delivery subject to a condition precedent, as it applies to this case?

From an examination of petitioner's motion, it is evident from any perspective that he is seeking to reform the instrument. He is attempting to have his liability discharged or at least limited by virtue of the alleged agreement, while the instrument would still remain valid as to the other makers. Petitioner contends, however, that evidence of a conditional delivery may be shown without violating the parol evidence rule. That is to say, he argues that a party may introduce oral evidence that a negotiable instrument, manually delivered, is not to become effective until the happening of a certain contingency or event. Cases which affirm this principle are: Vosburgh's Estate, 279 Pa. 329 (1924); Central Trust and Saving Company v. Benjamin Klebanoff, 85 Pa. Superior Ct. 427 (1925); Liab v. Kozuhowski, 53 Pa. Superior Ct. 50 (1913); Delaware County Trust Co. v. Hollingsworth, 12 Del. 469 (1913), 14 Del. 62 (1916). These cases were decided under the old Negotiable Instruments Law, section 16, which has been replaced by the U.C.C. Those cases were also based upon the *former* Pennsylvania parol evidence rule under which a party could always prove by oral testimony that he was induced to sign an instrument by a contemporaneous promise which was subsequently breached. The leading case espousing that principle was Gandy v. Weckerly, 220 Pa. 285 (1908). The holding that conditional delivery could always be proved by parol evidence is obviously a corollary to the principle of the Gandy case. If a party to an instrument delivers it subject to a condition, the other party's acceptance of the instrument necessarily constitutes an implied promise to accept that condition; and that implied promise is an inducing promise which could be proved if it were breached.

The parol evidence rule was changed in 1924 by the adoption of the "modern" parol evidence rule in Gianni v. Russell & Co., Inc., 281 Pa. 320 (1924), where the court stated, at page 324:

"In cases of this kind, where the cause of action rests entirely on an alleged oral understanding concerning a subject which is dealt with in a written contract, it is presumed that the writing was intended to set forth the entire agreement as to that particular subject. 'In deciding upon this intent [as to whether a certain subject was intended to be embodied by the writing], the chief and most satisfactory index . . . *is found in the circumstances whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing.* If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element.' " (Citation omitted; italics supplied.)

This decision did not, however, eliminate the principle of the Gandy case which was still paid lip service in United States National Bank v. Evans, 296 Pa. 541 (1929).

The old parol evidence rule was, however, laid to rest in Speier v. Michelson, 303 Pa. 66 (1931). In that case, the promissory note in question was executed and delivered subject to the condition that the note be paid from a particular fund. The contention was, therefore, that defendant's liability on the instrument was contingent upon the failure of that condition. Rejecting the principle of the Gandy case, Justice Kephart stated, at page 72:

"Any parol agreement that subjects the obligation on the instrument to any *condition* or contigency, whether *in person,* time or amount, is ineffective, and the instrument is unconditional, unless fraud, acci-

dent, or mistake was the means through which the instrument was procured."

See also Barnsley v. Shaffer, 358 Pa. 415, 418 (1948); Fenton Storage Company v. Feinstein, 129 Pa. Superior Ct. 125, 135 (1937).

The early cases concerning the parol evidence rule attempted to distinguish a delivery of the instrument which was conditional and an obligation under the instrument which was conditional. The attempt to do so resulted in a confused state of law in Pennsylvania. See 20 A.L.R. 421, 483-90. As to this distinction, it was stated in 20 A.L.R. 421, at page 428:

"The principle that a conditional delivery may be shown is clear. But it is exceedingly difficult to determine from the evidence whether a situation is presented in which the intent of the parties went to the delivery of the instrument, making it conditional, or merely to its obligation."

Referring to this situation, Professor Corbin stated in his article "Conditional Delivery of Written Contracts" in Selected Readings on the Law of Contracts at pages 915-16:

"The reason that it is 'difficult' is believed to be that *the distinction is purely imaginary.* A condition, whether expressed in the writing or extrinsically expressed, is always meant to affect the resulting legal relations, the legal 'obligation,' the legal 'effect' of the transaction. 'Delivery' is always factual in character; it always consists of conduct, although definitions vary somewhat in specifying the kind of conduct that will be an operative delivery." (Italics supplied.)

The holding in the Speier case and cases following it have avoided distinguishing between a "conditional delivery" and a "conditional obligation." We believe, therefore, that it is implicit in those holdings that de-

livery is a question for factual determination and that any oral contingency affecting the obligation of the parties is subject to the parol evidence rule. This conclusion is buttressed by the explicit wording of U.C.C., sec. 3-306, 12A PS §3-306(c), which allows the defense of "nonperformance of any condition precedent" and "delivery for a special purpose."

Further, U.C.C., sec. 1-201, 12A PS §1-201(14), defines delivery of an instrument as "voluntary transfer of possession." There is no issue raised by the pleadings of this case that Kelly did not voluntarily transfer possession of the note.

The effect, therefore, is to eliminate the defense of conditional delivery but allow a defense of failure of a condition precedent to the obligation when the instrument was obtained through fraud, accident or mistake. Here, Kelly alleges that the bank fraudulently advanced the loan to the corporation in violation of the agreement. Therefore, we will examine the quality of evidence necessary to support an allegation of fraud. In Speier v. Michelson, supra, regarding the oral agreement which would have made enforcement of the instrument conditional, Justice Kephart stated, at page 71:

"The evidence to establish such agreement must be of the same quality as would be necessary to reform a written instrument: Pender v. Cook, 300 Pa. 468, 473."

We therefore turn to Pender v. Cook, supra, in which the court held at page 473:

"Parol evidence to change, affect or lessen the legal liability occasioned by the manner in which names are placed on commercial paper can be considered only where fraud, accident or mistake is shown, and must be of the same quality and quantity as that which would reform a written instrument, that is, the evi-

dence must be *clear, precise, and indubitable,* established by two witnesses, or by one witness and corroborating circumstances. The rule which applies to the reformation of a contract or deed, applies with equal force to a change in liability as names appear on commercial paper . . . Whether such evidence meets the required standard as to justify submission to the jury is a question for the trial court . . ." (Citations omitted; italics supplied.)

This principle, as it applies to negotiable instruments in cases between the parties, has been reaffirmed subsequent to the adoption of the U.C.C. in Badler v. L. Gillarde Sons Co., 387 Pa. 266, 271 (1956). It is evident, therefore, that any defense of failure of a condition precedent is subject to the parol evidence rule the same as that of any contemporaneous agreement which would vary the liability apparent upon the face of an instrument which is complete and has not been materially altered. In this case, it is also apparent that the rule of Gianni v. Russell & Co., supra, applies because the liability of the parties in regard to their respective signatures is a circumstance intrinsic to the instrument itself. Petitioner may prove the existence of a contemporaneous agreement which was fraudulently breached, but he must meet the standards of proof set forth by our courts before he can introduce such evidence.

The recent decision in Paramount Distillers, Inc. v. Brookside Distilling Products Corp., 62 Lack. Jur. 165 (1960), cited by petitioner, does not discuss the parol evidence rule and we shall not therefore comment upon it. The case of Eaton v. New York Life Insurance Company of New York, 315 Pa. 68 (1934), concerns delivery only as it relates to insurance policies and is not applicable to other instruments.

We now consider if plaintiff's evidence meets the

requirements of the parol evidence rule as outlined in Pender v. Cook, supra. Petitioner does not cross the first hurdle for his testimony is far from "clear, precise, and indubitable," as defined in Easton v. Washington County Insurance Co., 391 Pa. 28, 37-38 (1957). The statements made by Kelly are filled with imprecision, uncertainty, and ambiguity. There is no testimony that Hoopy was ever aware of the alleged arrangement between the bank, Krout and Kelly. The testimony is unclear whether Kelly and Myers discussed the "agreement" that Hoopy would sign as a comaker before or after the bank had accepted the note. Further, the statements by Kelly indicate that there never was a firm arrangement with the bank, "just a conversation." No one ever told Kelly that he would be liable for only one-half the amount of the note; he just knew it. It is unnecessary to review the testimony of Kelly any further because the examples above show that he has failed to establish any agreement with the bank to have Hoopy sign the note as a comaker or to otherwise limit Kelly's liability on the note.

It is unnecessary to determine whether the blank space above Kelly's signature on the note is sufficient to corroborate his testimony and thereby avoid the two-witness rule, because, as a matter of law, his testimony is too ambiguous, vague and uncertain to be admitted under the parol evidence rule. Petitioner has not presented a jury question and the rule must be discharged.

## ORDER OF COURT

And now, February 22, 1973, for the reasons set forth above, the rule to show cause why the judgment should not be opened as to defendant W. Wayde Kelly is discharged and the petition therefore is dismissed.