J-A32037-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| FINKLE DISTRIBUTORS, INC., N/K/A FDI HOLDINGS, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| TROY M. HERZOG, INDIVIDUALLY, AND D/B/A THE HUB | |
| Appellees | No. 141 WDA 2015 |

Appeal from the Order Entered December 22, 2014
In the Court of Common Pleas of McKean County
Civil Division at No: 2009 AD 10148

BEFORE:  SHOGAN, OTT, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                **FILED MARCH 09, 2016**

Appellant, Finkle Distributors, Inc., n/k/a FDI Holdings, Inc., appeals from the December 22, 2014 order granting the summary judgment motion of Appellee, Troy M. Herzog ("Herzog"), individually and d/b/a The Hub ("The Hub," and, collectively with Herzog, "Appellees").  We vacate and remand.

The record reveals that Herzog owns and operates a convenience store known as the Hub, located in Smethport, McKean County.  Appellant is one of The Hub's long-time suppliers.  The instant dispute arises out of Appellees' alleged failure to pay for $83,989.12 in merchandise Appellant delivered during May and June of 2008.  Appellant commenced this action on

February 5, 2009, seeking to collect the amount allegedly due and owing from Appellees.

On July 23, 2010, Appellant entered into an asset purchase agreement ("APA") with Core-Mark Midcontinent, Inc. ("Core-Mark") whereby Core-Mark purchased Appellant's business, with the exception of certain excluded assets. The parties dispute whether Appellees account was among the excluded assets. The trial court granted summary judgment in favor of Appellees, concluding Appellant was not the proper party in interest because it sold Appellees' unpaid account to Core-Mark.

Appellant raises two issues in this timely appeal:

> 1. Whether a Defendant, buyer of goods, is precluded from challenging the interpretation of a contract between the Plaintiff, seller of goods, and the purchaser of many of the Plaintiff/Seller's assets where both agreed that Plaintiff/Seller retained the claim against Defendant/Buyer?

> 2. Whether evidence offered by Plaintiff that the purchaser of some of it's [sic] assets did not purchase the claim against the Defendant violated the parol evidence rule?

Appellant's Brief at 4.

We conduct our review according to the following well-settled standard:

> As has been oft declared by this Court, summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. In so doing, the trial court must resolve all doubts as to the

existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt. On appellate review, then, an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo.* This means we need not defer to the determinations made by the lower tribunals.

To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

**Summers v. Certainteed Corp.**, 997 A.2d 1152, 1159 (Pa. 2010) (internal citations and quotation marks omitted).

First, Appellant argues Appellees lack standing to challenge Appellant's and Core-Mark's interpretation of the APA. Appellant and Core-Mark agree the APA excluded Appellees' account from the sale. Appellant argues Appellee cannot dispute the interpretation of the APA attached to it by its parties.

Appellant relies primarily on **Drummond v. University of Pennsylvania**, 651 A.2d 572 (Pa. Comwlth. 1994), in which the plaintiffs—Philadelphia public school students, their parents, and other civic groups—contended that the University of Pennsylvania was not awarding a sufficient number of scholarships pursuant to an agreement between the University

and the City of Philadelphia.[1]  The Commonwealth Court concluded the plaintiffs lacked standing to challenge the proper interpretation of the agreement between the City and the University because plaintiffs were not third party beneficiaries of the agreement.  *Id.* at 579.

*Drummond*'s third party beneficiary analysis is inapposite here, as Appellees do not claim to be third party beneficiaries of the APA.  Appellees do not argue any provision of the APA was intended for their benefit.  Rather, Appellees assert Appellant is not the proper party in interest because Appellant sold its business, including the account receivable from Appellees, to Core-Mark.  As Appellees correctly note, Rule 2002 of the Pennsylvania Rules of Civil Procedure requires civil actions to be "prosecuted by and in the name of the real party in interest[.]"  Pa.R.C.P. No 2002(a).  Interpretation of the APA is necessary to assess whether Appellant is the real party in interest.  Appellees need not be third party beneficiaries in order to challenge Appellant's status as the real party in interest.  Appellant's standing argument lacks merit.

Next, Appellant argues the trial court erred in finding that Appellant sold Appellee's account to Core-Mark.  Appellant argues it was entitled to

---

[1]  The City passed ordinances conveying land to the University and permitting the University to mortgage that land on condition that the University issue a prescribed number of scholarships to students in the Philadelphia public school system.  *Drummond*, 651 A.2d at 574-75.

introduce affidavits from Appellant and Core-Mark to establish that Appellee's account receivable was among the assets excluded from the APA. The trial court excluded the affidavits as impermissible parol evidence. Appellant's brief does not address the law of parol evidence other than to say that it is inapplicable because the affidavits do not allege agreements that preceded or altered the integrated, written APA. Appellant's Brief at 18-19. Instead, affidavits from Appellant and Core-Mark indicate that both parties to the APA understood the agreement to exclude Appellee's account from the sale. Appellant also notes that, after its creditors initiated an involuntary bankruptcy proceeding, Appellant hired a collection agency to collect Appellant's remaining receivables, including Appellees' account. In light of these facts, Appellant asserts that its alleged ownership of Appellees' account presents a genuine issue of material fact, such that the trial court erred in entering summary judgment in favor of Appellees.

The parties agree the APA is an integrated contract reflecting the entire agreement of Appellant and Core-Mark. Section 2.2 of the APA governs excluded assets. APA at § 2.2. Among the excluded assets is "Retained Receivables." Section 1.1 of the APA defines Retained Receivables as follows: "**<u>Retained Receivables</u>**" means (a) the related party receivables set forth on <u>Schedule 2.2</u> hereto, (b) all Excluded Employee Receivables, (c) all receivables related to Vikisha and (d) all other receivables designated by Purchaser and Seller on <u>Schedule 2.2</u>." APA at

§ 1.1, "Retained Receivables." Schedule 2.2 in turn, contains a table of retained receivables. The partially redacted tables include various lump sum amounts, including one labeled "Vendor Receivables." APA at Schedule 2.2. The APA does not expressly include Appellees' account in the retained receivables. It also does not preclude the possibility that Appellee's account is among the retained receivables. The trial court found that Appellant no longer owns Appellees' account because section 2.2 and schedule 2.2 contain no express mention of it. The trial court declined to permit Appellant to introduce affidavits demonstrating the intent of the APA or its signatories' course of conduct since its execution.

We conclude the trial court erred. The Restatement (Second) of Contracts provides: "Where the parties have attached the same meaning to a promise or agreement or a term thereof, it is interpreted in accordance with that meaning." Restatement (Second) of Contracts § 201(1) (1981). In *Demharter v. First Fed. Sav. & Loan Ass'n of Pittsburgh*, 194 A.2d 214 (Pa. 1963), plaintiff contractors sought to recover money from the bank that loaned money to the landowner for development of residential real estate. The plaintiffs argued that the landowner was an "owner" and not a "contractor" under the loan agreement between the landowner and the bank, and therefore the bank had no contractual right to make payments directly to the landowner rather than to the contractors. *Id.* at 219-20. Our Supreme Court noted that the language of the loan agreement and the

course of dealing between the bank and landowner did not support the plaintiffs' argument. *Id.* The agreement contained "no actionable promise to the suppliers of labor and materials." *Id.* at 219. The Supreme Court wrote: "The construction placed upon a contract by the parties themselves is worthy of great consideration and generally will be adopted, particularly when such construction is made prior to the occurrence of any controversy or litigation[.]" *Id.* at 220.

Likewise, the *Drummond* Court cited § 201(1) of the Restatement (Second) of Contracts and noted that if the plaintiffs had standing they would seek to violate § 201(1) by imposing "a different contractual liability on the University than that asserted by the parties to the contract." *Drummond*, 651 A.2d at 579 n.9. As explained above, we do not believe Appellees lack standing to seek an interpretation of the APA, given that their purpose is to determine which of the parties to the APA is the proper party in interest. We do believe, however, that the principle expressed in § 201(1) and applied in *Demharter* and *Drummond* must guide the trial court's analysis on remand. Specifically, evidence of Appellant's and Core-Mark's intent "is worthy of great consideration." *Demharter*, 194 A.2d at 220.

We further conclude the trial court erred in relying on the parol evidence rule to exclude evidence of the APA parties' intent. The parol evidence rule provides as follows:

> Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any

previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract.

*Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436-37 (Pa. 2004). The parol evidence rule has several exceptions, one of which is an ambiguous term in the contract. "[W]here a term in the parties' contract is ambiguous, 'parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances.'" *Id.* at 437 (quoting *Estate of Herr*, 161 A.2d 32, 24 (Pa. 1960)).

Several cases have held the parol evidence rule does not apply where the party challenging the contract is a stranger to the contract. In *Badler v. L. Gillarde Sons Co.*, 127 A.2d 680, 683 (Pa. 1956), for example, the Supreme Court held the parol evidence rule inapplicable where a party to the litigation is not a party to the written agreement and asserts rights that do not arise from the agreement. Likewise, in *Roberts v. Cauffiel*, 128 A. 670, 671 (Pa. 1925) the Supreme Court held that the parol evidence rule "can have no relevancy where the suit is not between the two parties to the contract, or their privies; especially where, as here, there is no attempt to affect the writing in any way." The Supreme Court distinguished *Badler* and *Roberts* in *Evans v. Otis Elevator Co.*, 168 A.2d 573 (Pa. 1961) where the plaintiff employee sued the company his employer hired to maintain and inspect the employer's elevators. *Badler* and *Roberts* were "inapposite"

because "the law imposes upon [the elevator company] a duty as to [plaintiff] by reason of [the elevator company's] undertaking under the agreement and [plaintiff] cannot be said to be a stranger to this agreement nor do his rights arise dehors this agreement." *Id.* at 579.

Instantly, Appellant's rights do not arise from the APA. Appellant's arise from an alleged agreement whereby Appellant provided goods to Appellees in exchange for money. Likewise, Appellees do not assert any right under the APA, nor do they assert that either party to the APA undertook a duty to be exercised for Appellees' benefit. The APA has no bearing on the legitimacy of Appellant's allegation that Appellees owe Appellant $83,989.12. The APA is relevant only insofar as it determines whether Appellant or Core-Mark is the appropriate party to seek collection of that amount. Since the rights at issue in this litigation do not arise from the APA, and since Appellees are strangers to the APA, we conclude in accord with **Badler** and **Roberts** that the parol evidence rule does not apply.

In light of the foregoing, the trial court erred in excluding evidence of the intent of the APA parties. Proper interpretation of the APA presents a triable issue of fact. We therefore vacate the order entering summary judgment in favor of Appellees and remand for further proceedings in accordance with this memorandum.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/9/2016</u>